## STATE OF FLORIDA v DELORENZO

Case No. 89-37 (County Court Case No. MO89-487)

Ninth Judicial Circuit, Orange County

January 18, 1990

### APPEARANCES OF COUNSEL

**Paula C. Coffman, Esquire,** Assistant State Attorney, for appellant.
**Dennis F. Fountain, Esquire,** for appellee.

### OPINION OF THE COURT

RICHARD F. CONRAD, Circuit Judge.

Oral argument is dispensed with on the Court's own motion pursuant to Fla. App. R. 9.320.

The controversy in this case involves the construction and interpretation of certain provisions of the Orange County Adult Entertainment Code Chapter 1A. The sole issue on appeal is whether a provision of the Orange County Adult Entertainment Code prohibiting exposure of the pubic region is unconstitutionally vague.

Orange County Ordinance 1A-68(d) entitled Engaging in Prohibited Activity provides as follows:

"it shall be unlawful for an employee of an adult entertainment

establishment, regardless of whether it is licensed under this code . . .

(5) to display or expose at the establishment less than completely and opaquely covered human genitals or pubic region . . . "

On January 11, 1988 the Appellee, BECKY DELORENZO, was employed as a topless dancer at the Ambrosia Lounge, an adult entertainment establishment, in Orange County, Florida. It is alleged that the Appellee had exposed her "pubic region" and subsequently was charged by Amended Information with a violation of Orange County Ordinance 87-38, Section 1A-68(d). Appellee argued at the trial court level that the phrase "pubic region" was unconstitutionally vague and therefore this provision on the Orange County Adult Entertainment Code was void for vagueness. The trial court agreed and granted the defendant's motion to dismiss. The State now files its appeal.

Perhaps no better starting point can be found as a guide for the construction and application of statutes than the statement found in *Heydon's Case, Exchequer,* 1584, 3 Co7a, 76 Eng. Rep. 637, wherein it is said:

" . . . for the sure and true interpretation of all statutes in general (be they penal or beneficial, restricting or enlarging the common law) four things are to be discerned and considered:

—First. What was the common law before the making of the act.

—Second. What was the mischief and defect for which the common law did not provide.

—Third. What remedy the parliament hath resolved and appointed to cure the disease of the commonwealth.

—Fourth. The true reason of the remedy. And then the office of all the Judges is always to make such construction as shall suppress the mischief, and advance the remedy, and to suppress subtle inventions and evasions for the continuance of the mischief, and proprivato commodo, and to add force and life to the cure and remedy, according to the true intent of the makers of the Act, pro bono publico . . . "

While there have been some attempted elaborations and extensions of this rule since *Heydon's Case* was handed down, what is said therein still remains a sure guide for determining legislative intention, object and purpose.

In theory, there is a different between "interpreting" a statute and

26

"construing" a statute. In its narrow sense, "interpretation" means the determination of the true sense of the words used in the text, while "construing" means determining from the known elements of the text its true meaning and effect by a consideration of the subject matter and attendant circumstances in connection with the words employed. Reviewing many opinions concerning constitutional law, many courts use these terms interchangeably and consequently this opinion shall also do so. The fundamental purpose in construing a statutory provision is to ascertain and give effect to the intent of the framers and the people who adopted it. The object sought to be accomplished, therefore, must be kept constantly in view. The words and terms of a statute are to be interpreted in their most usual and obvious meaning, unless the text suggests that they have been used in a technical sense. The presumption is in favor of the nature and popular meaning in which the words are usually understood by the people who have adopted them.

The Appellee argues in her brief that in plain terms neither anatomical texts or English language dictionaries help to define that part of the body known to Orange County as the "pubic region". *Gray's Anatomy, 13th Edition, 1985,* states that the middle region of the lower zone of the abdomen is the hypogastric or pubic region. *Fishbein's Illustrated Medical and Health Encyclopedia, 1983,* defines pubic as pertaining to the hairy region in front of the lower abdomen and just above the sexual organs where the two pubic bones come together. *Darrin's Pocket Medical Dictionary, 22nd Edition,* defines pubes as hair growing over the pubic region.

In construing a statutory provision courts should not ignore the plain and ordinary meaning of words, unless it is absolutely certain that the words were not intended to be used in their commonly understood sense. On the other hand, where the text taken as a whole suggests that certain words wherein are intended to be used in a technical sense, the court should construe and apply them in that sense.

The Court is of the opinion that there is no question of the general and special or particular intent here. The words "pubic region" as used in the Orange County Ordinance should be given its plain ordinary and commonly accepted meaning, as well as its technical usage. The lower court found that it (pubic region) does not sufficiently notify the defendant with what she is charged with. R-18. The Court disagrees. The Court is of the opinion that any person, including the Appellee, BECKY DELORENZO, a person of common intelligent and exercising common sense would recognize that to display or expose human

**27**

genitals or the pubic region is a violation of the Orange County Ordinance.

REVERSED and REMANDED.